UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CEDRIC DENSON, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-13-1493 |
| | § | |
| BEAVEX INCORPORATED, *et al.*, | § | |
| *Defendants*. | § | |

MEMORANDUM OPINION & ORDER

Pending before the court are the following motions: (1) a motion to remand filed by plaintiff Cedric Denson ("Denson") (Dkt. 14); (2) Denson's motion for leave to file an amended complaint (Dkt. 25); (3) a motion for summary judgment filed by defendants BeavEx Incorporated ("Beavex") and Diana Montemayor ("Montemayor") (collectively, the "defendants") (Dkt. 12); (4) a motion to continue the submission date of defendants' motion for summary judgment, motion to reopen discovery, and motion for extension of time to submit a memorandum in support (the "first continuance motion") (Dkt. 15); (5) a supplemental motion for continuance, reopening discovery, and entry of a new scheduling order (the "second continuance motion") (Dkt. 19); (6) defendants' Rule 56(h) motion for sanctions (Dkt. 22 at 8–10); and (7) defendants' motion for sanctions under 28 U.S.C. § 1927 (Dkt. 20 at 3–7).

After reviewing the briefing, record evidence, and applicable law, the court finds as follows: Denson's motion to remand (Dkt. 14) is **DENIED**; Denson's motion for leave (Dkt. 25) is **DENIED**; Denson's first and second continuance motions (Dkts. 15 & 19) are **DENIED**; defendants' motion for summary judgment (Dkt. 12) is **GRANTED**; and defendants' motions for sanctions (Dkts. 20 & 22) are **DENIED**.  Defendants' initial motion for sanctions (Dkt. 16), which was amended on July 7, 2014, is **DENIED AS MOOT**.

# I. Background

*A.     Factual Background*

Denson is an African-American, heterosexual male who was employed by Beavex from August 2009 through April 2012. Dkt. 1, Ex. 1-B (original petition) at 3; Dkt. 12, Ex. A (Denson depo.) at 13:5–18. Denson was a second-shift dispatcher, in which he was responsible for dispatching couriers to customers' locations to meet their delivery and shipment needs. Dkt. 12, Ex. A at 50:24–51:23. At all relevant times, Denson reported to Beavex Operations Manager Diana Montemayor, a Hispanic female.[1] Dkt. 12, Ex. B (declaration of Sandra Foster) at 2 ¶ 6.

On February 8, 2011, eighteen months after he was hired as a Beavex employee, Denson received a warning for failing to notify Montemayor or Beavex's Terminal Manager, Art Dekenipp, that a driver on Denson's shift had lost his key at a client location. Dkt. 12, Ex. C (written disciplinary report) at 1. Denson was specifically warned that "[f]urther infractions may result in additional reprimands, up to and including termination of employment." *Id.*

On April 27, 2011, Denson received a second written warning for failing to ensure and verify pickup of a client's packages and failing to follow proper driver dispatch procedures. Dkt. 12, Ex. D (second written disciplinary report). Denson was again warned that additional infractions could lead to further discipline, up to and including termination. *Id.* Although Denson does not recall this written reprimand, he does not dispute its occurrence. Dkt. 12, Ex. A at 103:3–104:1. On the same day, Denson's co-worker Phyllis Pharr, a white female, also received a written warning for failure

---

[1] Denson pled in his original petition that Montemayor is a homosexual Hispanic female that preferred to hire other Hispanic workers, including her friends and family members as drivers. Dkt. 1, Ex. 1-B at 6–7. Denson also claimed that Montemayor favored homosexual over heterosexual employees. *Id.* at 3. Denson has not cited, however, any proof to substantiate these assertions.

to follow dispatch procedures. Dkt. 12, Ex. B at 2 ¶ 7. Montemayor issued both Denson and Pharr's written warnings. *Id.*; Dkt. 12, Ex. D at 1.

On June 9, 2011, Denson received a written warning for failing to dispatch a driver to pick up a client shipment. As on previous occasions, he was warned that future violations could lead to dismissal. Dkt. 12, Ex. E (third written disciplinary report). The next day, on June 10, 2011, a first-shift dispatcher, JoAnn Garza (hispanic female) received a warning for failing to dispatch a driver to pick up a client shipment. Dkt. 12, Ex. B at 2–3 ¶ 8. Both written warnings were administered by Dekenipp, the terminal manager. *Id.*; Dkt. 12, Ex. E at 1. Dekenipp issued two additional warnings on September 8, 2011. He administered a final written warning to Denson for failing to ensure the proper handling of an infectious specimen for a client. Dkt. 12, Ex. F (fourth written disciplinary report). This warning included a statement that he was being placed on a 90-day probationary period and that "[a]ny additional service failure will result in termination of employment. If you are unclear about these expectations, please be sure to raise your questions and concerns." *Id.* at 2. Dekenipp also administered a similar warning to Pharr, Denson's white female co-worker. Dkt. 12, Ex. B at 3 ¶ 9.

On October 1, 2011, Denson appealed his written warnings by sending an email to Human Resources employee Thao Nguyen and Beavex's Senior Vice President of Human Resources, Sandra Foster. Dkt. 12, Ex. G. He complained that "[t]he Operations Manager [Montemayor] works about 5–6 hours a day and has minimal interaction with the dispatchers. There is clear favoritism for the morning dispatcher with whom she has a personal friendship." *Id.* at 1. Denson did not state in this email that he felt discriminated against on the basis of race, gender, or sexual orientation.

3

4410ee4df4c87f79

Between March 29 and April 5, 2012, Denson had renewed performance issues relating to continued failures to follow dispatch procedures and notify management of problems implicating customer service. Dkt. 12, Ex. H (termination letter); Dkt. 12, Ex. B at 3 ¶ 10; Dkt. 12, Ex. 8 to Ex. B. On April 10, 2012, Montemayor terminated Denson's employment. Dkt. 12, Ex. H. Her termination letter stated that "[d]ue to the seriousness of these [performance] failures and previous written warnings about similar issues, we have lost confidence in your ability and willingness to successfully perform your job. Your employment is terminated effective immediately." *Id.* at 1. Plaintiff responded to his termination on April 24, 2012. Dkt. 12, Ex. I. He described his firing as "unfair and unjust," and alleged that "[e]mployees are treated differently based upon personal gain." *Id.* at 2. He did not state that any protected characteristic was a causal factor in his termination. Foster approved Montemayor's decision to terminate Denson in 2012, and she has not learned any facts in the interim that would lead her to reconsider her approval. Dkt. 12, Ex. B at 3 ¶ 11.

B.    *Procedural Background*

On February 8, 2013, Denson filed his original petition against Beavex and Montemayor in the 151st Judicial District Court of Harris County, Texas. Dkt. 1, Ex. 1-B. Denson alleges that Beavex discriminated against him on the basis of race and gender, in violation of Chapter 21 of the Texas Labor Code. *Id.* at 3. Denson additionally alleges that Beavex negligently supervised Montemayor and that Montemayor tortiously interfered with Denson and Beavex's business relations. *Id.* Denson served Montemayor on April 22, 2013, and Beavex was served on April 30, 2013. Dkt. 1 at 1 ¶ 2. Defendants timely removed the case on May 22, 2013. Dkt. 1. On September 13, 2013, the court issued a Rule 16 scheduling order, setting a deadline of March 7, 2014 for completion of discovery and a May 15, 2014 deadline for the filing of dispositive motions. Dkt. 9.

4

Defendants served Denson with interrogatories and requests for production on August 23, 2013. Dkt. 16, Ex. A. Denson untimely responded to defendants' written discovery requests on October 23, 2013. Dkt. 16, Ex. C. On February 21, 2014, defendants' counsel took Denson's oral deposition. Dkt. 16, Ex. D. The deposition was defended by Trey Thomas, an associate at the law firm of lead counsel Laurence Watts. *Id.* at 2. Thomas actively defended the deposition and asked questions of his client at the conclusion of defendants' direct examination. *Id.* at 3. Denson did not undertake any discovery whatsoever.

On May 15, 2014, defendants filed a motion for summary judgment as to all of Denson's claims. Dkt. 12. On May 20, 2014, Denson filed a motion to remand, claiming a lack of complete diversity of citizenship among the parties. Dkt. 14. Specifically, Denson argues that Montemayor, a Texas citizen, was properly joined and that she tortiously interfered with Denson's employment relationship by firing him for personal reasons. *Id.* at 7–9. Denson filed the first continuance motion on June 4, 2014, the date on which the response to the defendants' motion for summary judgment was due. In that motion, he requested a postponement of the submission date for defendants' motion for summary judgment and additional time to conduct discovery, as he had performed no discovery during the discovery period. Dkt. 15. Watts, Denson's counsel, attributed this failure to certain medical issues arising between 2010 and 2013 and his "simultaneous obligations in unrelated cases." *Id.* at 2–4; Dkt. 15, Ex. A (Watts declaration) at 1. Watts did not explain why Thomas, or any other attorney associated with his firm, failed to serve written discovery or seek depositions from the defendants during the generous discovery period in this case. Finally, in his certificate of conference, Watts stated that "Plaintiff's counsel has initiated conference with counsel for Defendants, however, due to the late hour, conference has not been accomplished and it should be presumed that

5

Defendants **oppose** this motion." Dkt. 15 at 4 ¶ 14 (emphasis in original).  Watts verified all of the factual statements in his motion under penalty of perjury.  *Id.* at 5.

Defendants responded to the first continuance motion on June 6, 2014.  Dkt. 16.  Defendants contend that the motion should be denied because plaintiff has not shown how additional time would lead to discovery creating a genuine dispute of material fact, nor has plaintiff demonstrated an exercise of due diligence in discovery to date.  *Id.*  Defendants note that Watts's first continuance motion makes no mention as to why he prioritized other matters over this case or why he failed to withdraw from this case due to his alleged medical issues and other case-related obligations.  *Id.* at 5–6.  In further response to these failures and Watts's allegedly false statement that he attempted to confer with opposing counsel before filing the first continuance motion,[2] defendants move for sanctions under Rule 56(h), which permits the court to assess fees and expenses against a party that submits an affidavit in bad faith or "solely for delay."  FED. R. CIV. P. 56(h).

On June 24, 2014, Watts filed a second motion for a continuance.  Dkt. 19.  Watts repeats that the reasons for his lack of discovery in this case include medical issues lasting through September 2013 and a backlog of other cases in state court.  *Id.* at 2–3.  He adds that his "only lawyer associate," "A.O.," resigned from Watts's firm on July 8, 2013.  *Id.* at 2.  He also lists seven proposed depositions of fact witnesses that he alleges "are of significance to Plaintiff's claim."  *Id.* at 4–5.  He states that he "has engaged two new lawyer associates who once they become familiar with this case will ease his burden, assist in Plaintiff's processing of his claims, and facilitate a

---

[2] Watts claims in his first continuance motion, filed on June 4, that he had not yet confirmed defendants' position on the motion, although he had purportedly "initiated" conference with defense counsel.  *See* Dkt. 15 at 4.  Defendants filed evidence that indicates that Watts did not initiate conference with defense counsel until two days later, on June 6, 2014.  Dkt. 16, Ex. F (Duddlesten declaration) at 1 ¶¶ 3–4; *see also* Dkt. 16, Ex. 1 (Watts email) to Ex. F at 1 (email from Watts to defense counsel conferring with them regarding their opposition, if any, to Denson's motion for a continuance—Watts apologizes "for the delay in conferring with you").  Watts explained at the oral hearing that he intended to send his June 6 email on June 4, but he inadvertently saved the email to his drafts folder instead.

hearing court's attempted delivery of a justice product for all parties." *Id.* at 6.  Watts concludes the motion with an identical certificate of conference: "Plaintiff's counsel has initiated conference with counsel for Defendants, however, due to the late hour, conference has not been accomplished and it should be presumed that Defendants **oppose** this motion." *Id.* (emphasis in original).  Once again Watts verifies the statements of fact in his motion under penalty of perjury. *Id.* at 7.

On June 30, 2014, defendants responded to the second continuance motion.  Dkt. 20. Defendants re-urge their previous arguments that the court should deny a continuance of the summary judgment submission date or reopen discovery. *Id.* at 1–2.  Defendants add that Watts has not addressed their earlier questions regarding (1) why Watts has prioritized other matters over this case; (2) why has Watts had time to speak to media outlets about other cases but not devote any attention to this case until the expiration of relevant deadlines; and (3) why Watts did not engage other associates (Trey Thomas, who defended Denson's deposition, Melissa Azadeh, or "A.O.") to assist with this case or withdraw from the matter due to his allegedly excessive workload. *Id.* at 2–3.

Concurrently with their response, defendants filed a motion for sanctions under 28 U.S.C. § 1927. *Id.* at 3.  Defendants argue that Watts made two false statements to this tribunal which unreasonably prolonged the proceedings and required defendants to incur unnecessary attorneys' fees to correct the record. *Id.* at 3–7.  Specifically, the defendants point to Watts's certificate of conference in the first continuance motion, which defendants claim was materially false in stating that Watts had initiated conference with defense counsel before filing his motion. *Id.* at 3–4. Second, defendants criticize Watts for making, and verifying, the same allegedly false statement of having initiated conference in the second continuance motion. *Id.* at 4.  Defendants claim that they had not received any calls or emails from Watts before he filed the motion, and thus his verified

statement to the contrary is objectively false and merits sanctions as vexatious conduct.  *Id.* at 4–7;
Dkt. 20, Ex. A (Miguez declaration) at 1 ¶ 4.

After reviewing the sanctions requests, the court set an oral hearing for the pending motions on July 10, 2014.  Dkt. 21.  The court ordered that any further responses be filed no later than July 7, 2014.  *Id.*  In response to the court's order, defendants amended their response to Denson's first continuance motion, Dkt. 22, and Denson filed a reply to defendants' response.  Dkt. 23.

The defendants' amended response appears substantively identical to the first response. Denson's reply, however, provides new, curious information from Watts in response to defendants' motions for sanctions.  Watts states that Trey Thomas (who defended Denson's deposition) left Watts's firm on June 2, 2014, while a new associate, "A.O.," joined the office on June 9, 2014.[3]  *Id.* at 2.  Watts further claims that he did not disregard this case to focus on other matters, but rather that an emergency temporary restraining order case took priority.  *Id.* at 3.  Watts then turns to the controversy over his certificates of conference.  With regard to his second motion, Watts states that "*[c]onference was accomplished prior to filing the motion*," under the theory that his earlier conference as to the first motion on June 6 subsumed the opposition to his second motion for a continuance.  Dkt. 23 at 3–4 (emphasis in original).  Finally, Watts requests that the court deny sanctions and grant the requested extension of time for discovery, as, in his words, the defendants "rely on misstatements of facts and dates."  *Id.* at 4.

---

[3] Watts's reply does not discuss whether the new associate, "A.O.," whom he states joined his firm on June 9, 2014, is distinct from the associate "A.O." that he verified in his second continuance motion as having left the firm on July 8, 2013.  Dkt. 19 at 2.

## II. Law & Analysis

The parties have filed the following motions: (1) Denson's motion to remand; (2) Denson's motion for leave to amend his complaint; (3) defendants' motion for summary judgment; (4) Denson's two motions to continue the submission date of the motion for summary judgment; and (5) defendants' two motions for sanctions.  The court will consider these motions in turn beginning with the motion to remand, as it raises the threshold question of subject-matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S. Ct. 1003 (1998) (reiterating the long-standing rule that "'[w]ithout jurisdiction the court cannot proceed at all in any cause'") (quoting *Ex parte McCardle*, 7 U.S. (Wall.) 506, 514 (1868)).

### A.      *Denson's Motion to Remand*

Denson argues that the court lacks diversity jurisdiction and should remand this case because Montemayor, a Texas citizen, is a properly-joined defendant.  Dkt. 14 at 2.  Denson contends that Montemayor tortiously interefered with his business relations with Beavex by terminating him for personal reasons at Beavex's expense.  *Id.* at 8–9.  Defendants respond that Denson has not sufficiently pled that Montemayor, an agent of one of the contracting parties, acted for purely personal motives or that Beavex objected to her decision, two prerequisites under Texas law for a tortious interference claim against Montemayor.  Dkt. 17 at 4–5.  Defendants conclude that Denson lacks any reasonable possibility of recovery against Montemayor, and thus she was improperly joined as a defendant and does not divest the court of diversity jurisdiction.  *Id.*

### 1.      <u>Legal Standard</u>

A defendant may remove an action to federal court if that court would have original jurisdiction over the case.  28 U.S.C. § 1441.  To establish subject-matter jurisdiction predicated on

diversity, complete diversity of citizenship must exist among the parties, and the amount in controversy must exceed $75,000.00. 28 U.S.C. § 1332. A case may be removed despite the presence of a non-diverse defendant if that defendant was joined improperly, *i.e.*, without a legal basis to do so. *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004). As the removing party, the defendant bears the heavy burden of demonstrating improper joinder. *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003). "Merely to traverse the allegations upon which the liability of the resident defendant is rested, or to apply the epithet '[improper]' to the joinder, will not suffice: the showing must be such as compels the conclusion that the joinder is without right." *Chesapeake & O.R. Co. v. Cockrell*, 232 U.S. 146, 152, 34 S. Ct. 278 (1914); *see also Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004).

A defendant generally establishes improper joinder in one of two ways: "'(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiffs to establish a cause of action against the non-diverse party in state court.'" *Smallwood*, 385 F.3d at 573 (quoting *Travis*, 326 F.3d at 646–47). The defendants do not assert actual fraud in this case. As to the second possibility, to prevent remand the defendants must demonstrate that "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against the in-state defendant." *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005) (internal quotation marks and citation omitted).

## 2.   **Analysis**

To recover against Montemayor for tortious interference, Denson must plead and prove: (1) the existence of a contract subject to interference; (2) the occurrence of a willful and intentional act of interference; (3) that actual damage or loss occurred; and (4) that the alleged interference was a proximate cause of the damage or loss. *See Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex.

10

1995).  The defendants' removal arguments center on Denson's alleged inability to recover through

a failure of pleading the second element, *i.e.*, that Montemayor's termination decision could not be

a willful and intentional act of interference.

When a defendant to a tortious interference claim is both an agent of a contracting party and

the third party who allegedly induced the entity's breach, the second element becomes particularly

important.  *Id.* at 796.  The plaintiff must show that the agent acted *solely* in his or her own interests,

as the agent's acts for the principal are otherwise deemed acts of the principal itself.  *ACS Investors,*

*Inc. v. McLaughlin*, 943 S.W.2d 426, 432 (Tex. 1997).  An agent's mixed motives—benefitting the

principal and the agent—are insufficient to establish liability.  *Id.*

In this case, Denson has merely pled that Montemayor "influenced his termination" because

she  "preferred Hispanic, Caucasian and gay employees," a predilection that Denson alleges led to

his being "subjected to consistent surveillance and scrutiny of his actions."  Dkt. 1, Ex. 1-B at 3–4.

Denson further pleads that Montemayor terminated his employment after an incident in April 2012

involving a Bank of America driver.  *Id.* at 7.  While Denson alleges that her decision was without

justification, he does not dispute that the incident was a causal factor in his termination.  *Id.*

These allegations, at best, show that Montemayor had mixed motives for terminating

Denson's employment, some of which benefitted her based on her allegedly unlawful preferences

and some of which were in Beavex's interests for employee discipline.  Denson's pleading thus does

not show that Montemayor's termination decision was *solely* in her own interests, and he fails to

state a claim for tortious interference.  *ACS Investors*, 943 S.W.2d at 432.  As Denson does not have

a reasonable basis for recovery against Montemayor, she is not a properly-joined defendant and her

Texas citizenship will be disregarded in the jurisdictional analysis.  The parties agree that the

complete diversity and amount-in-controversy requirements are otherwise met, and the court thus

has diversity jurisdiction over the case.  Denson's motion to remand (Dkt. 14) is **DENIED**.[4]

### B.    *Denson's First & Second Motions for Continuance*

As stated above, Watts has twice requested a continuance of the submission date of

defendants' motion for summary judgment, so that he may have more time to conduct discovery in

this matter.  Dkts. 15 & 19.  Watts claims that he was unable to conduct any discovery due to

multiple illnesses, surgery, and a backlog of other unrelated cases.  *See, e.g.*, Dkt. 19 at 2–3.

Defendants respond that Watts has not clearly demonstrated why he was unable to prosecute the case

at all in 2013 when the medical issues were largely resolved by 2012, or why he did not withdraw

from the matter or refer it to one of his associates.  Dkt. 22 at 5–8.

### 1.    <u>Legal Standard</u>

Under Rule 56(d) of the Federal Rules of Civil Procedure, "[i]f a nonmovant shows by

affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its

opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain

affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  FED. R. CIV.

P. 56(d).  A party seeking additional time under this rule must demonstrate an exercise of "due

diligence in discovery."  *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 756 (5th Cir. 2005).

---

[4] The court has reviewed Denson's eleventh-hour motion for leave to amend his complaint, filed in a clear attempt to defeat the court's subject-matter jurisdiction. *See* Dkt. 25.  Denson's proposed amendment comes almost eight months after the pleadings deadline of October 30, 2013, Dkt. 9, and Denson's reasons for delay are well outside the realm of "good cause" under Rule 16.  Further, Denson's amendment would be futile, as he has still failed to plead that Beavex objected to Montemayor's decision to terminate Denson's employment, a necessary showing for a tortious interference claim against a corporate agent.  *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 457 (Tex. 1998); *see* Dkt. 12, Ex. B at 3 ¶ 11 (Foster's testimony that she approved of Denson's termination at the time the decision was made and continues to agree with Montemayor's decision).  Thus, after considering the factors relating to a motion for leave to amend in these circumstances, Denson's motion (Dkt. 25) is **DENIED**.

2.    **Analysis**

Watts's explanation for his conduct falls far short of any reasonable definition of the "due diligence" standard.  Neither Watts, nor any of his associates for that matter, took any discovery during the discovery period in this case.  Watts responded in numerous filings and at the oral hearing that other cases took precedence over this matter, including a temporary restraining order for child custody, but he has not adequately explained why other cases and purported medical issues prevented anyone at his firm from pursuing even basic written discovery during the six-month discovery window *in this case*.  And while this court understands the impact that medical issues may have on one's ability to zealously represent his or her clients, this issue should have been raised and addressed much sooner—by Watts himself.  The Texas Disciplinary Rules enunciate the relevant ethical duty as follows:  "A lawyer shall decline to represent a client or, where representation has commenced, shall withdraw . . . from the representation of a client, if . . . the lawyer's physical, mental or psychological condition materially impairs the lawyer's fitness to represent the client." TEX. DISC. R. 1.15(a)(2).  At any rate, Watts's failure to prosecute this case, and his explanation therefor, are insufficient to warrant an extension of discovery before the summary judgment submission deadline.  Denson's motions for continuance (Dkts. 15 & 19) are **DENIED**.

C.    *Defendants' Motion for Summary Judgment*

Defendants move for summary judgment as to Denson's four live claims: (1) race discrimination; (2) sex discrimination; (3) negligent supervision; and (4) tortious interference.  Dkt. 12.  Denson has not responded to defendants' motion with any argument or evidence in opposition.

1.    **Legal Standard**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(a); *see*

13

*also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986).  A dispute is "material" if its resolution could affect the outcome of the action.  *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).  "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party."  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine dispute of material fact.  *See id.* at 322.  If the moving party fails to meet this burden, then it is not entitled to summary judgment, and no defense to the motion is required.  *See id.*  "For any matter on which the non-movant would bear the burden of proof at trial . . ., the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial."  *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 322–25.  To prevent summary judgment, the non-moving party must "set forth specific facts showing that there is a *genuine issue for trial*."  (former FED. R. CIV. P. 56(e)) (emphasis added).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant.  *Envtl. Conservation Org. v. City of Dall.*, 529 F.3d 519, 524 (5th Cir. 2008).  The court must review all of the evidence in the record without making credibility determinations or weighing

any evidence. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). Additionally, the court must disregard all evidence favorable to the moving party that the jury is not required to believe while giving credence to the evidence favoring the non-moving party and the uncontradicted evidence supporting the moving party. *Id.* However, the non-movant cannot avoid summary judgment simply by presenting conclusory "allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galinda v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

### 2.   Analysis

#### a.   *Race & Sex Discrimination*

The Texas Labor Code prohibits an employer from discriminating against its employees on the basis of "race, color, disability, religion, sex, national origin, or age." TEX. LAB. CODE § 21.051. One of the purposes of this statute, according to the Texas legislature, is to provide for "the execution of the policies of Title VII of the [federal] Civil Rights Act of 1964 and its subsequent amendments." *Id.* § 21.001(1); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001). As a result, Texas courts use analogous federal statutes and applicable case law to guide their reading of the Texas Labor Code's anti-discrimination provisions. *Quantum*, 47 S.W.3d at 476.

When a plaintiff lacks direct evidence of discrimination in his claim of unlawful termination, he may still prove his claim with indirect evidence through the familiar *McDonnell Douglas* three-step analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S. Ct. 1817 (1973); *Exxon Mobil Corp. v. Hines*, 252 S.W.3d 496, 508 (Tex. App.—Houston [14th Dist.] 2008, pet.

denied).  First, to avoid summary judgment, a plaintiff must show a genuine dispute of material fact as to the four elements of a *prima facie* case of discrimination.  *Willis v. Coca-Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006); *Hines*, 252 S.W.3d at 508.  To establish a *prima facie* case, the plaintiff must show (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) others similarly situated were treated more favorably.  *Willis*, 445 F.3d at 420; *Rutherford v. Harris Cnty.*, 197 F.3d 173, 184 (5th Cir. 1999). Once the plaintiff makes this showing, the burden of production shifts to the defendant employer to identify a legitimate, non-discriminatory reason for the adverse employment action.  *Johnson v. Louisiana*, 351 F.3d 616, 621 (5th Cir. 2003).  Finally, the plaintiff, who always bears the burden of persuasion to prove discrimination, must raise a genuine dispute of material fact that the non-discriminatory reason is pretextual.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43, 120 S. Ct. 2097 (2000); *Willis*, 445 F.3d at 420; *Hines*, 252 S.W.3d at 508.

Here, even assuming that Denson has met his initial *prima facie* burden, defendants have offered an undisputed, legitimate non-discriminatory reason for his termination.  *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1294 (5th Cir. 1994).  Specifically, Beavex produced ample evidence regarding Denson's discipline for rules violations, which Beavex proffers was the "direct—and the only—reason for Plaintiff's termination."  Dkt. 12 at 13 (citing Dkt. 12, Ex. B at 3 ¶ 11).  Denson has offered no evidence that Beavex's "proffered reasons were false, and . . . that the real reason for his discharge was because he was a member of a protected class."  *Pegram v. Honeywell*, 361 F.3d 272, 281 (5th Cir. 2004).  Denson's discrimination claims under the Texas Labor therefore may not proceed because a rational factfinder could not find that Beavex discriminated against Denson on the basis of race or sex.  *See Pratt v. City of Hous.*, 247 F.3d 601, 606–07 (5th Cir. 2001).

### b.     *Negligent Supervision*

Denson claims that Beavex negligently supervised Montemayor, his supervisor, by permitting her to engage in her unlawful racially and sexually discriminatory conduct.  Dkt. 1, Ex. 1-B at 7. Defendants respond that Denson's tort claim for negligent supervision is preempted by her antidiscrimination causes of action.  Dkt. 12 at 17.

Texas courts have generally recognized that employers "have a duty to use ordinary care in providing a safe work place."  *See Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996).  However, the Texas Supreme Court has also found that the comprehensive Labor Code provisions may supplant other general tort or administrative remedies aimed at the same conduct.  *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 807–08 (Tex. 2010).  In *Williams*, the court held that the plaintiff's negligent supervision claim was preempted by the Labor Code because "[t]he gravamen of Williams' complaint is sexual discrimination in the form of a hostile or abusive work environment, a wrong the [Labor Code] was specifically designed to remedy."  *Id.* at 809.  The *Williams* court explained that the Labor Code "implements a comprehensive administrative regime, . . . affords carefully constructed remedies, and [to allow] the alternative remedy would render the limitations in the [Labor Code] utterly meaningless and defeat the [Labor Code's] comprehensive statutory scheme." *Id.* at 807–08 (internal quotation marks omitted).  The court was concerned that if an employee could assert claims under the Labor Code and common law, then "employees would have little incentive to submit to the administrative process the Legislature considered necessary to help remedy discrimination in the workplace.  Such a result would frustrate clear legislative intent."  *Id.* at 808.

The court agrees with the defendants in this case that Denson's negligent supervision claim is preempted under *Williams*'s reasoning.  The essence of Denson's claim for negligent supervision is that Montemayor discriminated against him and Beavex failed to prevent or stop that conduct.  He

has not demonstrated with actual evidence that Montemayor engaged in misconduct that would support a tort claim outside the purview of the Labor Code.  In these circumstances, Denson's negligent supervision claim is barred under Texas law and must be dismissed.

### c.    *Tortious Interference*

As stated above, a plaintiff must plead and prove four elements of a tortious interference claim: (1) the existence of a contract subject to interference; (2) the occurrence of an act of interfernce that was willful and intentional; (3) that the act was a proximate cause of the plaintiff's claimed damages; and (4) that actual loss or damage occurred.  *Holloway*, 898 S.W.2d at 795–96. When the plaintiff alleges that an agent of a contracting party herself interfered with a contract, the plaintiff must prove the agent acted solely in furtherance of his or her personal interests, thereby departing from the agent's representation of the principal's business interests.  *Id.* at 796.

With regard to Denson's motion to remand, the court has already found that Denson did not adequately plead that Montemayor acted solely in her personal interests in dismissing Denson.  *See infra*, Part II.A.2.  And because Denson has failed to respond to defendants' motion for summary judgment, he has not offered any evidence to overcome his summary judgment burden in any case. Denson's tortious interference claim against Montemayor will therefore be dismissed.

### 3.    <u>Conclusion</u>

Denson has pled but offered no evidence to support his claims of race and sex discrimination, negligent supervision, and tortious interference.  Defendants' motion for summary judgment (Dkt. 12) is **GRANTED**, and Denson's claims are **DISMISSED WITH PREJUDICE**.

### D.      *Defendants' Motions for Sanctions*

Finally, defendants move for sanctions under Federal Rule of Civil Procedure 56(h) and 28 U.S.C. § 1927.  Dkt. 22 at 8–10; Dkt. 20 at 3–7.  Denson and Watts respond that defendants have not shown "any appropriate grounds for sanctions."  Dkt. 23 at 4.

### 1.      Rule 56(h) Sanctions

Rule 56(h) provides the court with the power to impose appropriate sanctions "[i]f satisfied that an affidavit or declaration under [Rule 56(h)] is submitted in bad faith or solely for delay."  FED. R. CIV. P. 56(h).  The advisory committee's note applicable to the 2010 amendment to subdivision (h) provides: "Sanctions are made *discretionary*, not mandatory, reflecting the experience that courts seldom invoke the independent Rule 56 authority to impose sanctions."  *Id.* (emphasis added).

Defendants argue that Watts's declaration filed in support of the first motion for a continuance, coupled with his allegedly false statement in the certificate of conference, are unethical and solely aimed at preventing the inevitable dismissal of this case.  Dkt. 22 at 8–10.  At the oral hearing Watts explained that he believed that he had initiated conference with defendants at the time of the first motion's filing, but his statement was erroneous due to an email error that he did not realize until June 6, when he actually initiated conference.  Defense counsel responded that Watts should have corrected the record sooner and should be held responsible for his lack of diligence.

Although this is a close case, the court cannot say, based on the record presented, that Watts's declaration filed with his continuance motion was done "in bad faith or solely for delay."  The defendants' first motion for sanctions (Dkt. 22) is **DENIED**.

### 2.      Sanctions Under § 1927

Section 1927 of Title 28 provides that an "attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess

costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  An attorney's conduct may be considered unreasonable and vexatious upon a showing of "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998) (citations omitted).  Because sanctions under this section are considered penal in nature, the statute is "strictly construed." *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1416 (5th Cir. 1994).

The court is quite concerned by the lack of diligence demonstrated by plaintiff's counsel in prosecuting this case.  Watts should have dedicated at least some his time or his associates' time to this matter during discovery—Denson deserved no less and probably more.  Watts's explanations for his failure are not only unpersuasive, they actually support the defendants' position.  Nonetheless, Watts's conduct is not so vexatious as to merit sanctions under a strict construction of 28 U.S.C. § 1927.  Defendants' second motion for sanctions (Dkt. 20) is **DENIED**.

### III. CONCLUSION

Denson's motion to remand (Dkt. 14) is **DENIED**, Denson's motion for leave (Dkt. 25) is **DENIED**, Denson's first and second continuance motions (Dkts. 15 & 19) are **DENIED**, defendants' motion for summary judgment (Dkt. 12) is **GRANTED**, and defendants' motions for sanctions (Dkts. 20 & 22) are **DENIED**.  Defendants' initial motion for sanctions (Dkt. 16), which was amended on July 7, 2014, is **DENIED AS MOOT**.

Signed at Houston, Texas on July 17, 2014.

Gray H. Miller
United States District Judge

20